UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PAMELA HERVEY                                                                                    PLAINTIFF

VS.                                                              CIVIL ACTION NO. 3:08cv180-DPJ-JCS

MISSISSIPPI DEPARTMENT OF EDUCATION                                                DEFENDANT

**ORDER**

This employment dispute is before the Court on Defendant's motion for summary judgment [62]. Having fully considered the parties' submissions and applicable law, the Court finds that Defendant's motion is well taken and should be granted.

I.     Facts/Procedural History

Plaintiff Pamela Hervey brings this suit against the Mississippi Department of Education ("MDE") following the termination of her employment as the principal of the Mississippi School for the Deaf ("MSD"). Hervey's tenure at the MSD was brief and rocky. Hired in September 2005, Plaintiff was already under review by the end of her first school year in May 2006 for multiple performance-related concerns. These issues are detailed below, but they generally include Plaintiff's perceived lack of leadership, her absenteeism, and even her "literacy." There is no dispute in the record that the atmosphere on campus was "chaotic," *see* Pl.'s Resp. at 14, culminating in a media-covered student protest. Following the protest, State Superintendent of Education Dr. Hank Bounds approved Assistant State Superintendent of Education Dr. Daphne Buckley's recommendation that the MDE terminate Plaintiff's employment as principal of the MSD. For her part, Plaintiff claims that none of the problems were her fault and that the termination was due to her race, African-American.

Having exhausted administrative remedies, Plaintiff brought suit in the Circuit Court of Hinds County, Mississippi, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, as well as various state law tort claims. Defendant removed the matter to this Court based on federal question jurisdiction and has moved for summary judgment. Personal and subject matter jurisdiction exist, and the matter is now ripe for decision.

II.     Analysis

   A.     Standard

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

Finally, in the employment context, "[i]t is more than well-settled that an employee's subjective belief that [s]he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

B. Title VII

Plaintiff claims that Defendant terminated her employment due to her race. As there is no direct evidence of discrimination, she relies on circumstantial evidence under the familiar *McDonnell Douglas Corp. v. Green* burden shifting analysis. 411 U.S. 792 (1973).

1. Plaintiff's Prima Facie Case

Plaintiff must first establish a prima facie case of discriminatory discharge by establishing that she (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for her position, and (4) was replaced by someone outside of the protected class or was treated less favorably than similarly situated employees outside the protected class. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007); *Rutherford v. Harris Co., Tex.*, 197 F.3d 173, 179, 184 (5th Cir. 1999). In the present case,

Defendant generically asserts that Plaintiff has failed to state a prima facie case. The Court will assume, arguendo, that a prima facie case has been established.

        2.       Defendant's Non-discriminatory Reasons for Discharge

If a plaintiff successfully establishes a prima facie case of discrimination, then "the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Turner*, 476 F.3d at 345. Identifying a nondiscriminatory basis for termination is a burden "of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir.2007); *see also Reeves*, 530 U.S. at 142. If the employer meets its burden, the burden "shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination." *Turner*, 476 F.3d at 345.

In the present case, Defendant has offered a plethora of reasons for the termination, claiming that Plaintiff was already under comprehensive review for perceived lack of competence before the students protested. Defendant cataloged these issues in its response to the EEOC, and proffers those same explanations as its legitimate non-discriminatory reasons for terminating Plaintiff's employment. Those reasons are as follows:

> The sole reason for the Charging Party's termination was her incompetence, including her inability to perform her administrative duties as principal of the high school at the MSD. . . . Charging Party was dismissed from her position as principal of the MSD due to her inability to fulfill the responsibilities of the position.
>
> At the end of the spring semester, May, 2006, an incident occurred which caused an in-depth review of the high school at the MSD. The incident involved the revelation of an improper relationship between a MSD teacher and student. When the relationship came to the attention of Dr. Daphne Buckley, Assistant State Superintendent of Education for Quality Professionals and Special Schools, she reported it to Dr. Hank M. Bounds, State Superintendent of Education. An

investigation ensued: the student graduated and the teacher was terminated. In discussions with Dr. Buckley and Dr. Bounds, both the Charging Party and Dr. Delores Mack, the superintendent, Mississippi School of the MSD stated that they knew of the inappropriate relationship, but did not think that they had the authority to address the situation. Both were informed that, as superintendent and principal, they had the full authority conveyed by law on these positions.

Other concerns regarding Charging Party's competency were raised during the summer months and as school resumed in the fall. Accordingly, the investigation was re-opened and the scope broadened. As various matters came to light, the Charging Party was provided assistance and counseled, as appropriate. These matters fell into several broad categories. The first concerned Charging Party's literacy. As a principal who holds an advanced degree and is currently working on a doctorate, Charging Party had difficulty writing a grammatically correct memorandum or letter with proper spelling. In an effort to assist the Charging Party, Dr. Buckley worked with Dr. Mack to review and correct documents composed by the Charging Party.

The second broad category concerned the Charging Party's failure to maintain a presence on the MSD campus and to properly supervise teaching staff. Charging Party hired four new teachers for the 2006-2007 school year. As noted below, two of these teachers had no signing skills when hired. The MDE was concerned when the Department discovered the Charging Party had hired individuals with questionable skills. There is also no evidence of any day-to-day, continuing, formal evaluation of MSD high school staff. According to the Charging Party, she conducted informal observations of the high school teachers in their classrooms. Interviews with some teachers confirmed these informal observations while other teachers denied same. These same interviews revealed that the Charging Party did not maintain a presence on the MSD campus. Concern was also raised when it was discovered that some students in the four new teachers' classrooms were not performing at appropriate levels. There is no evidence that the Charging Party intervened to address any inadequacies of instructional staff nor that she provided an appropriate educational environment for successful learning.

The third broad category concerned the Charging Party's lack of leadership skills. Many of the same concerns which support the MDE's negative assessment regarding the Charging Party's supervisory skills also support a like assessment of Charging Party's leadership skills: failure to maintain a presence on campus; lack of oversight of administrative and instructional staff; and, failure to intervene when questions regarding teaching competencies were raised by students' grades; and, the failure to maintain a proper educational environment.

> The investigation abruptly changed directions when a student protest occurred on the MSD campus. MDE staff responding to the protest found a campus in chaos: the Charging Party was not present, students failed to attend class without the permission of their instructors, the instructors on campus were divided into camps, and the press was present. In sum, MDE staff found a complete failure to provide a safe, healthy, and appropriate learning environment for these students. The MSD Superintendent and the Charging Party were placed on administrative leave with pay pending an investigation. An evaluation of the on-going investigation in conjunction with an assessment of the chaotic events of the campus protest lead to the conclusion that Charging Party's incompetency was directly responsible for the crisis situation at the MSD.

Ex. B to Pl.'s Resp. [66]. Plaintiff contends that this Position Statement "does not indicate any reasoning for arriving at the termination decision." Pl.'s Resp. [66] at 12-13. To the extent this is intended to contest Defendant's burden of production, it is not well taken, and the burden returns to Plaintiff to demonstrate pretext.

        3.     Pretext

At the pretext stage of the analysis, Plaintiff must prove "that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). The proper inquiry is "whether [MDE's] perception of [Plaintiff's] performance, accurate or not, was the real reason for her termination." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003) (internal quotations and citations omitted). "[E]ven an employer's incorrect belief in the underlying facts--or an improper decision based on those facts--can constitute a legitimate, non-discriminatory reason for termination." *Amezquita v. Beneficial Tex., Inc.*, 264 F. App'x. 379, 386 (5th Cir. 2008) (citing *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995)). The concern "is whether the evidence supports an inference that [MDE] intentionally discriminated against [Plaintiff], an inference that can be drawn if its proffered

reason was not the real reason for discharge." *Laxton*, 333 F.3d at 579; *Hennis v. Alter Trading Corp.*, No. 3:08CV32 DPJ-JCS, 2009 WL 44696, at *3 (S.D. Miss. Jan. 5, 2009), *aff'd*, No. 09-60060, 2009 WL 2605355 (5th Cir. Aug. 25, 2009). Thus, "[a]lthough an employee may disagree with an employer's decisions the Court is not in the position to 'second guess' those decisions without evidence that an individual's race was a determining factor in the end result." *Woodson v. Miss. Space Servs./Computer Sci. Corp.*, No. 1:05cv426WJG-JMR, 2007 WL 2012809, at *4 (S.D. Miss. July 6, 2007) (citing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503 (5th Cir. 1988)).[1]

Plaintiff's first problem at the pretext stage is her failure to "rebut each nondiscriminatory . . . reason articulated by the employer." *McCoy*, 492 F.3d at 557; *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) ("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.") (citing *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001) (noting a plaintiff "must

---

[1] Before proceeding further, the pretext issue must be narrowed in two ways. First, Plaintiff states in passing that white employees were treated better. This argument is not well developed, and a comparator is never specifically identified. Additionally, the argument finds no support in the record, because none of the other employees Plaintiff mentions in response faced "substantially similar" circumstances given Plaintiff's unique position as principal at the school and the array of Defendant's performance related concerns. *See, e.g.*, *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001) (holding that plaintiff must prove others were treated more favorably under "nearly identical circumstances"). Second, Defendant argues for a "same actor inference" suggesting that Plaintiff was hired and fired by Dr. Bounds. While Dr. Bounds approved of and was involved in the hiring and firing decisions, Defendant fails to acknowledge Dr. Bounds' testimony that he accepted Dr. Buckley's recommendation to terminate Plaintiff's employment. *See* Bounds Dep., Ex. D to Def.'s Motion at 17, 22; *see also* Buckley Dep., Ex. F to Pl.'s Resp. at 22. In *Russell v. McKinney Hospital Venture*, the court refused to apply the presumption because it was "not uncontested" that the same decisionmaker was involved. 235 F.3d 219, 229 n.16 (5th Cir. 2000). Here, the record is not sufficiently developed to apply the presumption in Defendant's favor.

present facts to rebut each and every legitimate non-discriminatory reason advanced by [her employer] in order to survive summary judgment")).

Defendant cited numerous reasons for the termination that Plaintiff failed to contest or adequately rebut. For example, Defendant claimed that Plaintiff failed to maintain a presence on the campus–including the day of the student protest. Dr. Bounds described this "inordinately high absentee rate" as a factor in the decision to terminate employment. *See* Ex. D to Def.'s Motion [62] at 29. Plaintiff acknowledged the absenteeism issue in response but never directly rebutted it. Pl.'s Resp. at 8.

Similarly, Defendant cited lack of oversight of administrative and instructional staff and failure to intervene when teaching competencies were questioned due to deteriorating student grades. Plaintiff denies the assertions as vague and unsupported and claims that race was the real motivating factor. The response is insufficient, because "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 96 (5th Cir. 1991).

In addition, Defendant cited ongoing problems with Plaintiff's "literacy." Plaintiff acknowledged the criticism in response, but merely claimed that the Defendant's perspective is "one-sided," she was not warned that it could lead to termination, and there is "no evidence *literacy problems* warranted termination." Pl.'s Resp. at 5 (emphasis added). As the emphasized language indicates, Plaintiff seems to acknowledge at least some level of literacy problems. Her subjective, conclusory contention that the issue did not merit termination is misplaced. *See Little*, 924 F.2d at 96 (holding that subjective beliefs not sufficient under Rule 56); *Woodson*,

2007 WL 2012809, at *4 (holding that mere second guessing is not sufficient to avoid summary judgment).

Plaintiff likewise claims that Defendant's perception of other performance issues was incorrect. For example, Dr. Bounds testified that Plaintiff was aware of an inappropriate relationship between a student and teacher yet believed as principal she had no authority to address it. Plaintiff claims that Dr. Bounds was not aware of her efforts to report the problem. Pl.'s Resp. at 5. Similarly, Plaintiff claims that Dr. Bounds "erroneously interpreted" her teacher evaluations. *Id*. at 7. As stated however, the issue is "whether [MDE's] perception of [Plaintiffs'] performance, accurate or not, was the real reason for her termination." *Laxton*, 333 F.3d at 579; *see also Amezquita*, 264 F. App'x. at 386 (holding that "even an employer's incorrect belief in the underlying facts--or an improper decision based on those facts--can constitute a legitimate, non-discriminatory reason for termination").[2]

Plaintiff attempts to show pretext in other ways that are equally unavailing. For example, Plaintiff spends a substantial portion of her memorandum establishing that there were racial tensions among the teachers and students at the MSD (the student population of which is 95% African-American), the decisionmakers were aware of the problems, and nothing was done to help her. The Court views these facts in a light most favorable to Plaintiff. *Little*, 37 F.3d at

---

[2] Plaintiff also addresses issues related to her hiring decisions. There is no dispute that tensions were high among the MSD students due to Plaintiff's decision to hire two teachers who could not communicate through sign language and two others who were apparently not highly proficient at it. Plaintiff claims pretext because MSD had a practice of hiring teachers who could not sign. While the hiring issue provides useful background information regarding the discontent on campus and the reason for the protest, Plaintiff's argument does little to establish pretext because MSD expressly stated in its EEOC Position Statement that the decision to hire teachers who could not sign was not a basis for termination. Ex. B to Pl.'s Resp. [66] at 4.

1075. In fact, the parties accept that the campus was in chaos. *See, e.g.*, Pl.'s Resp. at 14. Plaintiff argues though that she should not have been blamed for the unrest. She further argues, with no supporting authority, that the existing racial tensions and other documented problems on campus create a question of fact as to whether the decisionmakers were motivated by race. The argument is a nonsequitur.

Under Title VII the question is not whether racial problems existed on campus, the question is whether the decisionmakers were motivated by Plaintiff's race when they terminated her employment. "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quotations and internal punctuation omitted). Thus, terminating employment for failure to better handle racial and other issues would not amount to a termination "because of" a plaintiff's race. 42 U.S.C. § 2000e-2(a)(1). Plaintiff's argument also fails because it is subjective, *Little*, 924 F.2d at 96, and because "even an employer's incorrect belief in the underlying facts--or an improper decision based on those facts--can constitute a legitimate, non-discriminatory reason for termination." *Amezquita*, 264 F. App'x. at 386.

Finally, Plaintiff claims that some of her subordinates were motivated by race to interfere with her efforts to lead. "Typically, the person with authority over the employment decision is the one who executes the action against the employee. However, that is not necessarily the case." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (citations omitted). "If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their

discriminatory attitudes to the formal decisionmaker." *Id*. Plaintiff has not, however, offered a "cat's paw" argument or evidence that would support such an argument.

To summarize, there is no dispute that the campus was in chaos. Even before the protest, Defendant had been investigating Plaintiff due to a number of competency issues such as her literacy, absenteeism, and leadership. Plaintiff offers some evidence suggesting that she was performing to minimum expected standards, but she fails to rebut every nondiscriminatory reason Defendant offered for its decision, and much of her response offers an insufficient subjective disagreement with Defendant's conclusions. Having failed to meet her burdens under Rule 56, the Court finds that Plaintiff's Title VII claim is due to be dismissed.[3]

C.      State Law Claims

Plaintiff's Complaint includes state law claims for outrage and for intentional and/or negligent infliction of emotional distress. As Defendant observes, the Mississippi Tort Claims Act ("MTCA") "provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit." *City of Jackson v. Sutton*, 797 So.2d 977, 981 (Miss. 2001) (citations omitted). Moreover, a governmental entity and its employees, acting within the course and scope of their employment or duties, are not liable for discretionary functions. Mississippi Code § 11-46-9(1)(d) states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .

---

[3] Title VII also provides a mixed-motives approach after the employer has met its burden of production, but Plaintiff has not offered such an argument. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

11

(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

The test for determining whether conduct falls within the exclusion for discretionary functions was recently summarized in *Suddith v. University of Southern Mississippi* as follows:

> In order to determine whether governmental conduct is discretionary, this court employs the public policy function test articulated by the Mississippi Supreme First the court must determine whether the act involved an element of choice or judgment. If it does, the court must decide whether the choice involved social, economic, or political policy. The second prong of the test protects only those discretionary acts or decisions based upon public policy considerations. This limitation is to prevent judicial second-guessing of policy decisions through tort actions. Functions which by nature are policy decisions, whether made at the operational or planning level, are protected.

977 So. 2d 1158, 1179 (Miss. Ct. App. 2007) (internal citations and punctuation omitted).

In *Suddith*, the court affirmed summary judgment holding that the decision to withhold tenure to a professor involved in an inappropriate relationship was a discretionary function because the decisionmakers' " judgment regarding the hiring of a faculty member involved important social and public policy, such as providing the students of Mississippi at this public university with the best faculty members possible." *Id*. The same public policy considerations apply in this case. *See also Shelton v. City of Laurel*, No. 2:06cv111-DCB-MTP, 2007 WL 1141501, at *8 n.8 (S.D. Miss. Apr. 17, 2007) (observing that "the processes of hiring, supervising, and retaining police officers are discretionary functions which ordinarily insulate municipalities from suit") (citing *City of Jackson v. Powell*, 917 So. 2d 59, ¶ 52 (Miss. 2005) ("The manner in which a police department supervises, disciplines, and regulates its police

officers is a discretionary function of the government and thus the city is immune to suit under § 11-46-9(1)(d).")).[4]  Defendant's motion is granted as to Plaintiff's state law claims.

   D.   Miscellaneous Claims

Defendant also moved for summary judgment as to Plaintiff's claims under 42 U.S.C. § 1981 and § 1983 along with all claims for punitive damages.  Plaintiff did not present any argument or summary judgment evidence in response essentially waiving the claims.  Nonetheless, the Court has considered the record as a whole and finds that Plaintiff may not assert a § 1981 claim against a public employer.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  The § 1983 claim is precluded because MDE is an arm of the state not subject to liability under § 1983.  *Will v. Mich. Dep't. of State Police*, 491 U.S. 58 (1989).  Finally, the state is not subject to punitive damages.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 465-66 (5th Cir. 2001).  Defendant's motion is granted as to Plaintiff's claims under §§ 1981 and 1983, and Plaintiff's claim for punitive damages.

III.   Conclusion

The Court has considered all issues raised in Plaintiff's submissions, and those not expressly addressed herein are rejected.  Based on the foregoing, Defendant's motion for summary judgment is granted.

---

   [4] Defendant also contends that the alleged conduct fails to rise to a sufficient level as to the tort claims.  Given the Court's ruling under the MTCA, it is not necessary to address this argument of shocking/outrageous conduct to withstand summary judgment.

13

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED** this the 6th day of January, 2010.

                                                s/ *Daniel P. Jordan III*
                                                UNITED STATES DISTRICT JUDGE